16337

## SOUTH CAROLINA STATE HIGHWAY DEPARTMENT v. BUTTERFIELD *ET UX.*

(58 S. E. (2d) 737)

*Mr. E. W. Johnson*, of Spartanburg, *for Appellants,*

*Messrs. John M. Daniel,* Attorney General, and *T. C. Callison, Asst. Atty. General,* of Columbia, and *C. Erskine Daniel,* of Spartanburg, *for Respondent,*

April 10, 1950.

BAKER, Chief Justice.

This is an appeal in a Condemnation Proceeding brought by the State Highway Department against the appellants, Clayton E. Butterfield and his wife, Mrs. Elizabeth G. Butterfield, over a right of way across the front of their lot of land on which was situated a porchless, brick dwelling, fronting on and located not less than sixteen feet from the old right of way.

The Proceeding below, brought in the usual statutory manner, was before Honorable E. C. Dennis, Judge, and a Spartanburg County Common Pleas jury who found a verdict for the appellants for $200.00. A motion for a new trial was made and refused without the passage of a formal order. In due time notice of appeal was given and the matter is now before this Court, alleging error on the part of the trial Judge as more particularly set out in various exceptions. These exceptions raise the following issues:

1. Can the Attorney General or anyone else bind the State Highway Department to do something in the future by way of minimizing damages, in connection with the taking of the Appellants' land, when the action then being tried involved that very question of damages?

2. Considering the proximity of the Appellants' porchless dwelling (six inches from the overhang and three feet three inches of the front wall) to the new right of way, was it not improper to refuse to permit the property owners to testify that they merely wanted their house moved back, what it would cost to move it back, why their septic tank and drainage were placed under what would be the new right of way, that they would not be able to borrow money from the largest building and loan association in Spartanburg, and give their house as collateral with the highway right of way so close to their front door?

3. Was it not error to refuse to charge Appellants' only request when the same was an appropriate proposition of law?

The issue before the Court below was (1) the value of the land actually taken (2) what damage, if any, was caused to the residue of the lot and building thereon. To be deducted from the total of those two items was the benefits, if any, accruing to the lot and building thereon because of the proposed improvement to the highway or street.

The brick dwelling on appellants' lot did not sit square with the property line running practically parallel with the

street and old right of way, the west corner being 19 feet from the front line, and the east corner 16 feet. The new right of way being acquired apparently squares the dwelling with the highway or street and new property line within approximately three feet of the front of the dwelling and within six inches of the overhang of the roof. The highway engineer testifying for the respondent was indefinite as to precisely where the right of way would extend on appellants' property, but it is certain that it will take all of the front yard, and be in close proximity to the residence.

The sewer which appellants installed for this building or residence is not connected with the City of Spartanburg sewage line, but is a privately owned septic tank and drainage, which tank will be under the right of way being acquired, although the drainage will be on the remaining property of the appellants. When this was testified to, Mr. Callison, the Assistant Attorney General, interposed an objection. We quote from the record at that stage of the trial.

"Mr. Callison: I do not think that is material. The Highway Department will take care of that. If any of that has to be moved it will be taken care of by the Department because it is up to the Highway Department.

"Mr. Johnson: Your honor, I don't think he can get up in Court and tell us what the Highway Department will do. They have not told us they would do anything. She was told where to put her tank—

"The Court: Mr. Callison knows what he says and that the Highway Department will do what he says they will do. If they damage the tank or drainage they will correct it. That is in open Court and is down in the notes of the stenographer.

"Mr. Johnson: Mrs. Butterfield, why did you put the tank—your honor, may I ask why she put the tank on front?

"The Court: I do not think so.

"Mr. Johnson: If it was put there from the standpoint of the best place on her property, I think it is competent.

"The Court: I do not think so. They said if they injured it they will correct it. You can leave the tank and pipes out of it."

It is very properly stated in appellants' brief that ██ "Mr. Callison in his capacity of Assistant Attorney General could not bind the Highway Department by this record to do something in the future, this was an action for condemnation for the taking of the Appellants' property. If the Highway Department damaged the septic tank or the drainage, the pending action was to determine in dollars the amount of the damage and thereafter it was not up to the Highway Department to do anything. Mr. Callison could not even bind his successor in office not to bring an action, or not to take an appeal, nor could he assent to or ratify anything which lies within the province of the legislature. Where he appears before the Court he does so as an officer discharging his duty of representing a state or a subdivision thereof before the Court; he does not appear as an attorney at law, or as an attorney employed in the case, but exercises the functions imposed on him by law. (And there is no function imposed upon him by law allowing or permitting him to bind the Highway Department as to what it will do in the future.) 7 C. J. S., Attorney General, §§ 5-7, pp. 1224, 1225.

"There was no evidence in the record that the Highway Department knew about the septic tank being under the right of way, certainly they had made no commitment about it, and the jury was entitled to know all of the elements involved, and the property owners were entitled to have presently settled all of their claim for just compensation." The only way that appellants could have been protected as to their septic tank and drainage was for the Court to have instructed the jury that if they found from the evidence that the appellants were entitled to have the septic tank and drainage taken care of by the Highway Department as part of the compensation they would receive, then their verdict

would have to so state that it be reconstructed and cared for by the respondent.

Further, the appellants should have been permitted to show the reason for having placed the septic tank and drainage at the front of the property and any resulting damage if it has to be placed at some other point, and the cost of making the necessary change.

If the moving back of appellants' house and taking care of the sewage disposal would remove the damage to the remainder of appellants' property, they being willing thereto, and the respondent was unwilling to do so, then the cost of moving the house back would also be an element of damage to be considered by the jury, and testimony along this line was admissible. And so was testimony that a loan would not be made with this property as security with the right of way of the respondent extending to within such close proximity to the dwelling thereon.

All testimony tending to affect the value of an injury to the remaining property of the appellants was competent and relevant, and unless the jury had the benefit of this testimony, they could not arrive at a just verdict. In the recent case of *South Carolina Power Co. v. Baker,* 212 S. C. 358, 46 S. E. (2d) 278, both the majority opinion and the dissenting opinion recognize that the burden of proof is upon the owner to show that the taking of part of his property will cause damage to the remainder, and that unless he shows such damage by affirmative evidence, his compensation will be limited to the value of the land taken.

It was for such purpose that the appellants offered the testimony which was disallowed by the trial Judge, thereby leaving the jury with no basis from which a reasonable and proper estimate of the compensation to be paid to the appellants could be made.

The appellants requested the trial Judge to charge the jury as follows: "When the Highway Department takes a right of way from an individual, it takes it

not only for such purposes and usages as were known to the land owner at the time of the taking but for all public purposes present and prospective consistent with its character as a public way and not actually detrimental to the abutting property."

The trial Judge refused to so charge the jury, which was consonant with his former rulings during the trial of the case. However, such rulings were erroneous, and it was also error to refuse to charge the jury the submitted and requested charge. The requested charge is the recognized law in this State. *Leppard v. Central Carolina Telephone Co.,* 205 S. C. 1, 30 S. E. (2d) 755.

All exceptions are sustained, the judgment is reversed and the case is remanded for a new trial.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.